UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DARREN DIGGES, | ) | CIV. 08-5070-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER REVERSING AND |
| | ) | REMANDING DECISION |
| MICHAEL J. ASTRUE, | ) | OF COMMISSIONER |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Darren Digges (Digges), moves the court to reverse the decision of the Commissioner of Social Security (Commissioner), which denied Digges's motion to waive recovery of overpayment of disability insurance benefits in the amount of $20,757.80. The Commissioner opposes the motion. The court reverses and remands the Commissioner's decision.

## BACKGROUND

Digges is a wheelchair-bound quadriplegic who was awarded disability insurance benefits in November 1985, with an onset date of May 26, 1985. AR 259. Digges returned to work at Mileage Plus, Inc. in April 1993, where he continued working until at least July 2006. AR 259.

The SSA conducted a continuing disability review in November 1996. AR 50. The SSA determined that Digges's trial work period ran from April 1993 through December 1993, and his extended period of eligibility began January

1994. AR 50, 55. At the time of the review, the SSA determined that Digges was not engaged in substantial work. AR 50.

Mileage Plus raised Digges's hourly rate from $9.99 an hour to $14.50 an hour beginning May 19, 2002. AR 103-04. Digges began earning $14.94 an hour for the pay period ending February 22, 2003. AR 73.

On April 13, 2003, Digges completed a work activity report. AR 317-28. He indicated that he was working at Mileage Plus about 20 hours per week and earning $14.94 an hour. AR 318. Digges also reported that he worked irregular hours and took frequent rest periods, was given special transportation to and from work, was given a larger work area to accommodate his wheelchair, and was given special computer equipment to help him with his limited hand function. AR 319-20. Digges indicated that he used his earnings to pay for attendant care, a taxi-type service, and medication for an irregular heartbeat. AR 321, 328. Finally, Digges provided a list of his expenses for a personal attendant, work lunch, and para transit for January 2001 through December 2002. AR 325-26.

At the bottom of the penultimate page of the work activity report is a note signed by "Scott 342-0242 Ext. 216." AR 321. The note reads, "Mr. Digges, Please submit payslips for period 1/97 to present so I can verify your monthly wages. If not available, do I have your permission to verify your wages directly with MPI?" AR 321. The note is followed by two blank boxes, with "Yes" and "No" written next to them. AR 321.

On May 13, 2004, the SSA sent Digges a "Notice of Proposed Decision" informing him that based on the information available to the SSA, it appeared

that his disability had ended and that he was no longer entitled to payments. AR 47. According to an SSA record, Digges spoke to an SSA representative about impairment related work expenses (IRWE) on May 21, 2004. AR 330-31. Digges informed the representative that he paid his father to provide attendant care services. AR 330. Digges also indicated that he paid $4 a day for wheelchair-accessible transit while regular mass transit cost $2 a day. AR 330. The representative informed Digges that the SSA required additional information to determine the amount of IRWE to be deducted from his gross earnings. AR 329. Digges was instructed to provide signed statements verifying that he paid for the services, his need for services, and that the expenses were not paid by any other source. AR 329. He was also instructed to provide a statement from his father relating to attendant care services. AR 329.

Digges completed another work activity report on July 7, 2004. AR 332-37. He indicated that he was paid $14.50 an hour at Mileage Plus. AR 333. Digges also reported that he paid $5,160 for a personal care aid in 2001, $792.22 for medical expenses in 2001, $4,740 for a personal care aid in 2002, $1,168.23 for medical expenses in 2002, and $1,320 for transportation for 2001 and 2002. AR 336. Digges also submitted a statement from his father indicating the amount Digges paid his father for personal care attendance in 2001 and 2002. AR 358-60.

On September 10, 2004, the SSA informed Digges that he no longer qualified for disability insurance benefits because he became able to do substantial and gainful work in May 2002. AR 43. The letter explained that

3

the last check to which Digges was entitled was the check for July 2002. AR 43. Digges requested reconsideration of the SSA's decision on September 28, 2004, and in a letter dated October 14, 2004, the SSA affirmed its decision that Digges was not entitled to benefits beginning in August 2002. AR 55, 58. The SSA determined that the amount of the overpayment, which Digges was obligated to pay back, was $20,757.80. AR 274.

On April 6, 2005, Digges requested waiver of overpayment recovery. Ex. 1.[1] He indicated that he reported his wage increase to the SSA: "[i]n late 2002—probably November or December—Mr. Digges went to the SSA office at 605 Main in Rapid City and talked to a man named Scott, and told Scott about the raise." Ex. 1 at 2.

On June 21, 2005, the SSA determined that Digges was not without fault in the overpayment even though Digges said he reported the wage increase to Scott in the Rapid City office because Digges should have been aware that he was not due the benefits he continued to receive. Ex. 13. Thus, recovery of the overpayment should not be waived. Ex. 13. Digges was notified of the SSA's decision on September 30, 2005. Ex. 14 (September 30, 2005, letter).

---

[1] Exhibits 1-22, available at Docket 11, supplement the administrative record. Counsel for Digges received a fax from the SSA on June 9, 2006, the day of the hearing, indicating that there were new exhibits for the hearing. These exhibits, which relate to the overpayment proceedings, are Exhibits 1-20. Exhibit 21 is the cover page of the brief Digges submitted to the Appeals Council, and Exhibit 22 is a copy of the fax that counsel for Digges received on the morning of the hearing. Exhibit 22 was attached to the brief Digges submitted to the Appeals Council, but was not reproduced in the administrative record. See Declaration of James D. Leach in Support of Motion to Supplement Record, Docket 11.

4

Digges had a personal conference with an SSA representative on October 12, 2005. Ex. 15. On October 18, 2005, the SSA affirmed its previous decision that Digges was overpaid by $20,757.80 and was not entitled to waiver of overpayment recovery. Ex. 14 (October 18, 2005, letter). The SSA found Digges to be at fault in creating the overpayment as he knew or should have known that he was not entitled to the Social Security checks that he received while working at a substantial level. Ex. 14 (October 18, 2005, letter). The SSA explained,

> At the personal conference you informed us that you called the Social [Security] office when you got a raise at your place of employment. You said that you knew you were disabled and that earnings would affect your checks. You thought that since you had impairment related work expenses for transportation and attendant care that this would offset some of your earnings. When the Social Security benefits continued to be issued you thought you were still due the checks.
>
> You were knowledgeable enough[] to know that work and earnings would affect your monthly benefit and you also had knowledge of impairment related work expenses. Therefore you knew or should have known that you were not due the Social Security benefits.

Ex. 14 (October 18, 2005, letter at 2).

Digges requested a hearing on the overpayment determination on October 31, 2005. Ex. 16. The hearing was held before Administrative Law Judge Larry M. Donovan (the ALJ) on June 9, 2006. AR 413. Counsel for Digges submitted a brief to the ALJ prior to the hearing. AR 380-86. The brief indicated that Digges reported his pay increase to an employee named Scott at the Rapid City SSA office and argued that Digges was without fault in accepting the Social Security checks after his May 2002 pay increase. AR 380.

The day of the hearing, Digges agreed to have the ALJ decide the case based on the written record. AR 416. The ALJ made a statement on the record identifying the evidence before him. AR 415-16. He did not name the exhibits relating to Digges's request for waiver of overpayment recovery (Exhibits 1-20) that were referenced by the SSA in a fax sent to counsel for Digges the morning of the hearing.[2] Digges represents that neither Digges nor his attorney were present when the ALJ made this statement on the record. Ex. 16; see also Declaration of James D. Leach, Docket 14 ("In fact, neither Mr. Digges nor I were present in the hearing room when the ALJ made this recording. The ALJ looked at my hearing brief . . . before the hearing, then suggested that because everything was in my brief, we did not need to have a hearing. I agreed to submit the case on the record, without a hearing."). Indeed, there are no statements or appearances from either Digges or his attorney in the transcript. AR 415-17.

The ALJ issued his opinion on July 25, 2006. AR 24. He found that Digges engaged in substantial gainful activity beginning in May 2002 and as a result his disability ended that month and his entitlement to benefits ended in August 2002. AR 21. Thus, Digges was overpaid by $20,757.80. AR 23.

Next, the ALJ considered whether recovery of the overpayment should be waived. AR 21. He explained that waiver of an overpayment depends on

---

[2] The fax was sent to Digges's attorney by Marie at the Social Security Administration/Office of Disability Adjudication & Review in Rapid City on June 9, 2006. The cover page reads, "New exhibit list for Darren Digges for the overpayment file–this file was not worked up previously please call if you have questions." Ex. 22.

whether the claimant was (1) without fault in accepting the incorrect payment, and (2) whether recovery of the overpayment would defeat the purpose of Title II of the Social Security Act or be against equity and good conscience. AR 21-22.

The ALJ found that Digges was not without fault. AR 23. He explained,

> [A] Continuing Disability Review was performed due to the claimant working, and although the claimant was notified that a trial work period was involved, he was again informed that changes in his work could affect his benefits, and that he may have to repay any benefits which were not due him, and also included at least one example as a change in earnings, and that the claimant was also provided with an Agency pamphlet regarding disability benefits (Ex. Section B).

AR 23. The ALJ also addressed Gladden v. Callahan, 139 F.3d 1219 (8th Cir. 1998), a case relied on by Digges in his hearing brief. The ALJ distinguished Gladden on the ground that in Gladden, the claimant was without fault in accepting an overpayment because an ALJ had told him that as long as he was not working full-time, he was not engaged in substantial, gainful activity. AR 23. In contrast, the ALJ reasoned, no SSA official made such a statement to Digges. AR 23. Further, "while the claimant attempts to focus attention upon his allegation that he informed Agency personnel of his pay raises, even the claimant himself makes no allegation that any Agency official advised him that he could earn any amount as long as he was working part time." AR 23. Because there is no evidence that Digges relied upon incorrect advice, the ALJ concluded, Gladden was inapplicable. AR 23.

The ALJ found that Digges accepted payment that he either knew or could have been expected to know was incorrect, so that he was not without

7

fault in accepting disability insurance benefits. AR 23. Thus, the ALJ did not consider whether repayment would defeat the purpose of the Act or be against equity and good conscience. AR 23.

The Appeals Council denied Digges's request to review the ALJ's decision on August 14, 2008. AR 6. This appeal followed.

## STANDARD OF REVIEW

The decision of the ALJ must be upheld if substantial evidence in the record supports it as a whole. 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Substantial evidence is less than a preponderance but enough evidence that a reasonable mind might find it adequate to support the conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Fines v. Apfel, 149 F.3d 893 (8th Cir. 1998); Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). Review by this court extends beyond a limited search for the existence of evidence supporting the Commissioner's decision to include giving consideration to evidence in the record which fairly detracts from the decision. Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

Under section 405(g), the court is to determine whether there is substantial evidence in the record as a whole to support the decision of the Commissioner and not to reweigh the evidence or try the issues de novo. Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Further, a reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Woolf v.

8

Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993); see also Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993). The court must review the Commissioner's decision to determine if an error of law has been committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir. 1983). The Commissioner's conclusions of law are only persuasive, not binding, on the reviewing court. Smith v. Sullivan, 982 F.2d at 311; Satterfield v. Mathews, 483 F. Supp. 20, 22 (E.D. Ark. 1979), aff'd per curiam, 615 F.2d 1288, 1289 (8th Cir. 1980). If the ALJ's decision is supported by substantial evidence, then this court cannot reverse the decision of the ALJ even if the court would have decided it differently. Smith v. Shalala, 987 F.2d at 1374.

## DISCUSSION

When the Commissioner determines that an individual has been overpaid disability benefits, the Commissioner "shall require such overpaid person or his estate to refund the amount in excess of the correct amount." 42 U.S.C. § 404(a)(1)(A). But "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b). In determining whether an individual is without fault, the Commissioner shall take into account any physical, mental, educational, or linguistic limitations the individual may have. 42 U.S.C. § 404(b).

The applicable regulations further define fault:

9

> What constitutes fault . . . on the part of the overpaid individual . . . depends upon whether the facts show that the incorrect payment to the individual . . . resulted from: (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The fact that the Social Security Administration may have been at fault in making the overpayment does not relieve the overpaid individual from liability for repayment if such individual is not without fault. 20 C.F.R. § 404.507. The overpaid individual has the burden of establishing that he was without fault. See Coulston v. Apfel, 224 F.3d 897, 900 (8th Cir. 2000). The Commissioner's determination that a claimant was not without fault must be upheld if it is supported by substantial evidence on the record as a whole. Chapman v. Bowen, 810 F.2d 151, 152 (8th Cir. 1986).

Here, Digges does not dispute the Commissioner's finding that he was overpaid by $20,757.80. Rather, he disputes the Commissioner's finding that he was not without fault because he knew or could have been expected to know that he was not entitled to receive payments after his 2002 pay raise. The court has reviewed the administrative record and the supplement to the record (Exhibits 1-22), and concludes that the ALJ's decision was not supported by substantial evidence in the record.

There is some indication in the record that Digges knew he had an obligation to report changes in his work status and earnings to the SSA. In November 1996, SSA sent Digges a letter informing him that the SSA had found that his disability was continuing, along with the dates of his trial work

10

period. See AR 50. An information sheet accompanied this letter. Under the heading, "Things to Remember," the sheet indicated, "[y]ou must tell us right away about any changes that may affect your benefits. If you do not, you may have to repay any benefits which are not due." AR 51. The sheet instructed Digges to inform the SSA if, among other events, his work duties or pay changed, or if he started paying for work expenses related to his disability. AR 51. Another sheet explained the trial work period and explained that after the trial work period,

> [y]our right to monthly payments will still continue if you are disabled and your average earnings are not over:
>
> - $500 a month beginning in January 1990, or
> - $300 a month before January 1990.
>
> If your average earnings are more than these amounts, we call your work substantial and we will stop your monthly payments.

AR 53. This information, which Digges received over five years before he received the pay raise that rendered him ineligible for disability insurance benefits, suggests that he could have been expected to know that the disability insurance benefits payments he received after he began earning $14.50 an hour for about twenty hours of work per week were incorrect. But this evidence must be considered in light of all the record evidence.

There is nothing in the record from between November 1996 and May 13, 2004, when the SSA sent Digges notice of its proposed decision to terminate his benefits, providing evidence for the ALJ's decision that Digges knew or could have been expected to know that he was not entitled to receive payments after his May 2002 raise. Digges completed a work activity report at the

11

request of the SSA on April 18, 2003. AR 317. The SSA requested that Digges provide information about his work since January 1, 1997, because "[w]e are doing a regular Work Review on your Social Security Disability." AR 317. Unlike an explanation like, "the SSA is 'checking to see if [plaintiff] can still receive Social Security disability checks' because '[plaintiff] returned to work,' " Motta v. Astrue, No. CIV 08-5061-RHB, 2009 WL 1838992, at *4 (D.S.D. June 24, 2009), nothing in the explanation Digges received could be expected to give Digges notice that his earnings had reached the level of substantial and gainful activity.

Indeed, Digges did not receive correspondence from the SSA indicating that he was no longer eligible for disability insurance benefits until May 13, 2004, when the SSA informed him that it appeared his disability had ended and he was no longer entitled to payments. AR 47. The May 13, 2004, letter provides substantial evidence to support the ALJ's decision that Digges knew or could be expected to have known that his disability payments were in error as of that date. See Brenner v. Astrue, No. 4:07 CV 1632 DDN, 2008 WL 3925166, at *7 (E.D. Mo. Aug. 20, 2008) (finding that Notice of Proposed Decision letter is substantial evidence that plaintiff either knew or could have been expected to know that accepting payments was incorrect). But the May 13, 2004, letter did not put Digges on notice prior to his receipt of this letter. Thus, the court cannot say that the ALJ's finding that Digges was not without fault in accepting the incorrect payments is supported by substantial evidence with respect to the payments he received before May 13, 2004.

The November 1996 correspondence from the SSA is evidence to show that Digges either knew or could have been expected to know that accepting payments after his May 2002 pay raise was incorrect. But the ALJ did not consider Digges's claim that he reported his raise to an employee in the Rapid City SSA office shortly after he received it. Digges claimed that he reported his wage increase in late 2002 in his request for waiver of overpayment recovery (Exhibit 1). This document is not part of the administrative record and was not referred to in the ALJ's on-the-record listing of the exhibits the day of the hearing. And the ALJ made no mention of this document in his decision. Thus, even though the ALJ indicated in his opinion that he had carefully considered all of the evidence in the record, including those exhibits not cited in the opinion, AR 17, the court finds that Digges's request for waiver of overpayment recovery (Ex. 1) and his claim that he reported his wage increase in late 2002 to an SSA employee in Rapid City contained therein, was not considered by the ALJ.[3]

---

[3] The ALJ did refer to Digges's claim, presumably drawn from the hearing brief Digges submitted on June 9, 2006, that he informed SSA personnel of his pay raise. AR 23 ("[C]laimant attempts to focus attention upon his allegation that he informed Agency personnel of his pay raises."). But the ALJ did not clarify that Digges reported his pay raise to an employee in the Rapid City office in 2002 or refer to the statement provided by Digges in his request for waiver of overpayment recovery (as opposed to the assertion made by Digges's attorney in the hearing brief).

Moreover, the ALJ discussed Digges's argument in the context of his discussion of Gladden. The ALJ seemed to imply that Gladden stands for the proposition that a claimant is only without fault if he relies on a statement by an SSA official. The ALJ misconstrued Gladden. There, the claimant was found to be without fault because he relied on erroneous information from the ALJ regarding what constitutes substantial and gainful activity. Gladden, 139

Digges's claim that he contacted the SSA office when he got his raise is also documented in the SSA's decision finding that Digges was at fault in the overpayment. Ex. 14 (October 18, 2005, letter at 2). This document, which the court finds was not considered by the ALJ for the same reasons outlined above, also documents Digges's claim that he thought his expenses for transportation and attendant care would offset his earnings for the purposes of determining whether he was substantially and gainfully employed. Ex. 14 (October 18, 2005, letter at 2). The ALJ did not consider whether Digges believed that he had IRWE and whether this belief affected whether he knew or could have been expected to know that he was not entitled to disability benefits.

It is well-established that the ALJ must consider all of the evidence and develop the record fairly and fully. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). Here, the ALJ did not consider any of the documents relating to Digges's request for waiver of overpayment recovery. Because Digges's assertion that he reported his pay raise to an official in the Rapid City SSA office in late 2002 and that he believed his earnings were offset by IRWE may affect whether he knew or could be expected to know that he was no longer entitled to disability insurance benefits before he received the SSA's notice of proposed decision on May 13,

---

F.3d at 1223. Gladden did not hold that a claimant *must* rely on erroneous information from an SSA official to be without fault. Thus, to the extent the ALJ concluded that Digges was not without fault because he did not rely on erroneous information from an SSA official, the ALJ misinterpreted the law. On the other hand, Gladden is clearly distinguishable from the present case, so this court cannot conclude as a matter of law that Digges was without fault.

2004, the court remands this case for a rehearing and consideration of the relevant evidence contained in the supplement to the record (Exhibits 1-22).

Accordingly, it is hereby

ORDERED that the Commissioner of Social Security's decision denying Digges's request to waive recovery of overpayment of disability insurance benefits is reversed and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated August 12, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE